# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK McFARLAND, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Case No. 4:12cv290 RWS/TCM** |
| | ) | |
| IAN WALLACE,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER AND REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Derrick McFarland (Petitioner), a Missouri prisoner, petitions the United States District Court for the Eastern District of Missouri for federal habeas corpus relief from a conviction after a jury trial. See 28 U.S.C. § 2254. Respondent filed a response, along with exhibits consisting of materials from the underlying state court proceedings.[2] (See Doc. 8.)

This matter is before the undersigned United States Magistrate Judge for review and a recommended disposition of Petitioner's federal habeas petition.[3] See 28 U.S.C. § 636(b).

---

[1] Petitioner is serving concurrent terms of imprisonment as a result of the judgment he is challenging in this habeas proceeding. Because Petitioner is not challenging a sentence he will serve in the future, it is not necessary to name the Attorney General of Missouri, Chris Koster, as a respondent in this case. See Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts.

[2] The undersigned will direct that the second volume of the trial transcript, Resp't Ex. A-2, as well as the legal file for the underlying state criminal case, Resp't Ex. B, be maintained under seal because they disclose complete social security numbers, see, e.g., Trial Tr., Resp't Ex. A-2, at 156 and Judgment, Legal File, Resp't Ex. B, at 50.

[3] Petitioner originally filed a petition that lacked a signature page. See Pet'r unsigned Pet'n [Doc. 1]. Pursuant to Court order, Petitioner thereafter filed a petition including a signature page. See Order, dated Feb. 23, 2012 [Doc. 2]; Pet'r signed Pet'n [Doc. 4]. The undersigned will only

After careful consideration, the undersigned will recommend the denial of the petition upon concluding that Petitioner is not entitled to relief because grounds one through three lack merit and grounds four and five are procedurally barred.

## <u>Background</u>

Petitioner was charged, as a prior offender, with acting alone or with another in committing first degree murder in violation of Mo. Rev. Stat. § 565.020 (Count I) and armed criminal action in violation of Mo. Rev. Stat. § 570.015 (Count II) by knowingly and with deliberation causing the death of Lawrence J. Warren ("Victim") by shooting him with a gun on December 26, 2005, in Butler County, Missouri. (Am. Information, Legal File, Resp't Ex. B, at 12-13.) On a change of venue, the case was moved from Butler County to New Madrid County, Missouri. (Order, dated Feb. 14, 2006, Legal File, Resp't Ex. B, at 11.)

During voir dire at the two-day jury trial in January 2007, venireperson John Huck had the following discussion with the prosecutor when the prosecutor asked if anyone knew the "civilian witnesses," including a person named "Dontae Weakly,"

> JOHN HUCK:        John Huck, I coached him in baseball, years ago.
>
> [PROSECUTOR]:   How long ago was that, you think?
>
> JOHN HUCK:        Oh, maybe 15 years ago.
>
> [PROSECUTOR]:   Anything about your relationship at that time with Mr. Weakly that would, that wouldn't you, wouldn't allow you to evaluate the testimony or anything else, or sway you one way or the other?

consider the matters presented in the signed petition, and will recommend that the unsigned petition be denied as moot.

JOHN HUCK:        No.

[PROSECUTOR]:   You can give both sides in this case a fair hearing
in that relationship?

JOHN HUCK:        No.

[PROSECUTOR]:   You don't think so, okay.   You said it was
basketball?

JOHN HUCK:        Baseball.

[PROSECUTOR]:   Baseball.  And you said 20 years ago?

JOHN HUCK:        15 or 20.  It was a long time ago.

(Trial Tr., Resp't Ex. A, .at 30-31.)  Huck also stated he knew another potential witness,

Sergeant Cooper with the Missouri State Highway Patrol, "kind of casually" and would not

have a problem evaluating his testimony.  (Id. at 33-34 and 37.)  Petitioner's attorney did not

specifically question Huck further during his voir dire.  (See id. at 43-64.)  While Petitioner

requested to strike several venirepersons for cause, Huck was not one of them, and Huck sat

on the jury hearing Petitioner's case.  (Id. at 64-79.)

The State presented thirteen witnesses.  (Id. at 102-354.)  Christina Smith, an officer

with the Poplar Bluff Police Department, secured the scene, which was a pickup truck in

which Victim was found on December 26, 2005.  (Id. at 102-08.)  Tim Davis, a detective with

the Poplar Bluff Police Department, processed the scene; found two empty 380 shell casings

in the back of the truck and two live rounds a distance from the truck; attended the autopsy;

and obtained a projectile recovered from Victim's skull during the autopsy.  (Id. at 108-23.)

David Warren (id. at 224-32), a firearms and tool marks examiner with the Southeast Missouri

Regional Crime Laboratory, testified about his examination of the firearm in this case. (<u>Id.</u> at 224-26, 227-30.) Warren opined that the projectile labeled State's Exhibit 9 had passed through the barrel of the gun marked State's Exhibit 4. (<u>Id.</u> at 228-30.) Chuck Stratton, a lieutenant with the Poplar Bluff Police Department who is responsible for maintaining evidence, testified about how the evidence for this case was transported and stored after it was seized. (<u>Id.</u> at 232-38.) Bruce Goin, from the Butler County coroner's office, testified that the death certificate stated the cause of death was a gunshot wound in the head. (<u>Id.</u> at 123-26.)

Elgin Anders, who "went with" Victim's mother, testified (<u>id.</u> at 127-60) that on December 26, 2005, Petitioner came by to visit and asked if Anders had any "38 or 380" shells; when Anders responded that he had some "38" shells but he would have to find them, Petitioner suggested that they go to Wal-mart instead. (<u>Id.</u> at 128-29.) Anders got in the back seat of the car while Petitioner got in the driver's seat; two other individuals Anders did not know were already in the car; and Anders could not see the face of the man sitting in the front passenger seat because "he put a hood on his head" from a black leather coat he was wearing, even though it was not cold in the car. (<u>Id.</u> at 130-31.) At Wal-mart, Petitioner handed Anders money, and Anders went in the store, bought 100 "rounds of 380 shells," and then handed them to Petitioner. (<u>Id.</u> at 132.) The man in the front seat loaded a gun with some of them. (<u>Id.</u>; <u>see also</u> <u>id.</u> at 144-45.) Petitioner then drove Anders home and dropped him off. (<u>Id.</u> at 134, 136.) Victim was at the home when they got there, and Victim and Petitioner spoke, although Anders did not know what they talked about. (<u>Id.</u> at 136; 146-48.) After learning

later that Victim had been shot, Anders helped the police locate the car that Anders had been in when Anders bought the ammunition.  (Id. at 137-39.)

Corey Mitchell, an investigator with the Poplar Bluff Police Department (id. at 160-75), verified Anders' information about buying the ammunition (id. at 161-64) and interviewed Travis Henderson on December 28, 2005 (id. at 165-66, 170).  When an officer went to the interview room with the black leather coat, Henderson admitted he shot Victim, saying "I f---ed my mother f---ing life up," and then described what happened.  (Id. at 166.)

Antwon Dontae Weakly (id. at 176-212), who is related to and familiar with Petitioner, testified that he was with Petitioner and Henderson on the night of December 26, 2005, when they drove to Poplar Bluff and picked up Anders, who sat in the back of the car where  Weakly was sitting, to buy ammunition.  (Id. at 176; 177-78; 182.)  Weakly owned a black leather coat that Henderson was wearing that evening.  (Id. at 180.)  After going to the store, Anders gave the bullets to Petitioner and Henderson ended up having them; and then Anders was dropped off at his home, where Weakly saw Petitioner and Victim talking.  (Id. at 181, 184-86.)  They dropped Weakly off at Petitioner's brother's house, where Weakly stayed while the other two left.  (Id. at 179-80.)  When Weakly got back in the car with Petitioner and Henderson later, Weakly heard Henderson say he had just shot somebody.  (Id. at 180-83, 186.)  About a week earlier, Petitioner had shown Weakly a "380 handgun."  (Id. at 184.)

Monique Stanford (id. at 214-23) had a relationship with Weakly prior to December 26, 2005, and knew Petitioner because he was having a relationship at that time with her "very good" friend, Nicki Willis.  (Id. at 215-16.)  During this time, Stanford heard Petitioner make

a threat against Victim, that Petitioner was going to "kill that mother f---er" and was going to "get him."  (<u>Id.</u> at 215, 217-18.)

Diane "Nicki" Willis (<u>id.</u> at 240-57) stated that in December 2005 she had a relationship with Petitioner, who stayed at her home on occasion.  (<u>Id.</u> at 240-41.)  On December 26, 2005, she took a message from Victim, who had called Petitioner's cell phone; Victim asked her to "tell [Petitioner that Victim] had a package for [Petitioner]."  (<u>Id.</u> at 241-42.)  Prior to this telephone call, Petitioner had told Willis that Victim and another "had jumped him, had beat him up."  (<u>Id.</u> at 243.)  On December 26, 2005, Petitioner left Willis' house during the evening and did not return until the early morning hours, before daylight, of the next day, when he arrived with Weakly and someone else.  (<u>Id.</u> at 243-44.)  She did not know what had happened when Petitioner was picked up for questioning by the police within a day or two.  (<u>Id.</u> at 244.) When she learned that somebody had been killed in Butler County; that Petitioner, Weakly, or Henderson, who had been in her home, may have been involved; and,  after Marco Debose suggested there might be something in her home that she would need to get rid of,  she searched her home and found a gun (State's Ex. 4) on the top shelf of her closet.  (<u>Id.</u> at 244-46.)  She wrapped the gun in one of her daughter's shirts and gave it to her brother for disposal. (<u>Id.</u> at 247-48.)  Her brother later showed the police where he put the gun.  (<u>Id.</u> at 248.)

 Scott Stoelting, a Sergeant with the Missouri State Highway Patrol (<u>id.</u> at 344-54) talked with Willis and Willis' brother after Willis found a gun in her home.  (<u>Id.</u> at 344-45.) Sergeant Stoelting subsequently recovered the gun, State's Exhibit 4, which was wrapped in a shirt, from the location described by Willis' brother.  (<u>Id.</u>)

Debose (id. at 258-68) testified that he had a conversation with Henderson around December 27, 2005, in which Henderson showed Debose some crack cocaine and said he had received it for "handl[ing] a problem" for someone. (Id. at 259, 260.) In particular, Henderson told Debose that he "walked up on the car [where Victim was], . . . shot off in the car, . . . [Victim] made a noise, and, [Henderson] shot him, and . . . ran off." (Id. at 260.) Debose did not remember suggesting to Willis that she search her home and get rid of what she might find, but he told the police that he told her to do that. (Id. at 266.)

Travis Henderson (id. at 268-343) was, at the time of Petitioner's trial, incarcerated on a "prior drug conviction for distribution of [a] controlled substance" (id. at 269). He testified that he pled guilty to the murder of Victim pursuant to an agreement with the State of Missouri that he would plead guilty to "second degree murder rather than first degree murder in exchange for [his] cooperation and testimony" in Petitioner's trial. (Id. at 268-69; 285; 288-92.)

With respect to the shooting of Victim, Henderson acknowledged that on December 26, 2005, he went to Poplar Bluff with Petitioner and Weakly, where they first stopped at Anders' home. (Id. at 270.) He was sitting in the front passenger seat of the car they were in and wore a black coat with the hood up. (Id. at 270-71.) They drove Anders to a store to purchase 380 caliber bullets and Petitioner handed Anders money to do so. (Id. at 271.) Upon returning to the car, Anders handed the bullets to Petitioner. (Id. at 272.) Some bullets were "wiped off" and "put into the gun," and Henderson put some bullets in his pocket. (Id. at 273.) After the purchase, they dropped Anders off at his home and dropped Weakly off at Petitioner's brother's

home.  (Id.)  Petitioner told Victim to meet him at a specific house in about twenty minutes, and told Henderson that Petitioner blamed Victim for "[s]ome dope and money" that had been taken from Petitioner.  (Id. at 274, 276.)

Henderson testified that Petitioner suggested Henderson shoot Victim "for some money [$2,500] and some crack," and Henderson agreed to do it after first suggesting that he just beat up Victim.  (Id. at 274-76.)  Petitioner told Henderson that Victim was "a problem" and "I need to just get him out [of] the way."  (Id. at 277.)  During the ride to the house where Victim was to meet them, Henderson smoked dope that Petitioner had provided.  (Id. at 274-77.)  Petitioner dropped Henderson off and then Henderson followed Petitioner's instructions by hiding behind a house until Victim arrived and then approaching and shooting Victim.  (Id. at 278-80.)  When Victim saw Henderson he begged him not to shoot and tried to get back in the truck.  (Id. at 279.)  Henderson shot Victim in the chest and head.  (Id. at 279-80.)

After the shooting, Henderson fled the scene and met Petitioner, who had witnessed the shooting from a distance.  (Id. at 281-82.)  They picked Weakly up and drove back to Willis' home.  (Id. at 283-84.)  Henderson gave the gun to Petitioner, and the last time Henderson saw the gun it was on a kitchen counter in Willis' home.  (Id. at 284-85.)  At the time Henderson was arrested, Petitioner had not given Henderson the money or all the drugs Petitioner had promised to give Henderson for shooting Victim.  (Id. at 287-88.)

The State rested (id. at 354, 355) and Petitioner unsuccessfully moved for judgment of acquittal at the close of the State's evidence (id. at 355; Pet'r Mot., Legal File, Resp't Ex. B, at 14-15).  Petitioner then rested without presenting evidence (id. at 357, 358) and

unsuccessfully submitted a motion for judgment of acquittal at the close of all the evidence (id.; Pet'r Mot., Legal File, Resp't Ex. B, at 16-17).

During closing argument, Petitioner's trial attorney stated, in relevant part, that "[i]t's not about w[he]ther [Victim] was killed, or whether it was cool reflection if he was killed, it was whether there was an agreement" between Petitioner and Henderson to kill Victim. (Trial Tr., Resp't Ex. A, at 379-80.)

The parties did not object to any of the proposed instructions. (Trial Tr., Resp't Ex. A, at 356.) In relevant part, the verdict director for the first-degree murder offense stated in full:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about December 26, 2005, in the County of Butler, State of Missouri, that Travis Henderson caused the death of [Victim] by shooting him and
>
> Second, that Travis Henderson knew that his conduct was practically certain to cause the death of [Victim], or that it was Travis Henderson's purpose to cause the death of [Victim], and
>
> Third, that Travis Henderson did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,
>
> then you are instructed that the offense of murder in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
>
> Fourth, that with the purpose of promoting or furthering the death of [Victim], [Petitioner] aided or encouraged Travis Henderson in committing that offense,
>
> then you will find [Petitioner] guilty under Count I of murder in the first degree.
>
> However, unless you find and believe from the evidence beyond a

reasonable doubt each and all of these propositions, you must find [Petitioner] not guilty of murder in the first degree.

Instruction No. 8 (Legal File, Resp't Ex. B, at 25).

The jury found Petitioner guilty of the charged offenses. (Trial Tr., Resp't Ex. A, at 387-90; Verdict Forms, Legal File, Resp't Ex. B, at 39-40.) The trial court denied Petitioner's motion for judgment of acquittal nothwithstanding the verdict, or, in the alternative, motion for new trial. (Pet'r Mot., Legal File, Resp't Ex. B, at 41-50; Sentencing Tr., Resp't Ex. A, at 391-92.) The trial court sentenced Petitioner to two concurrent terms of imprisonment consisting of life without probation or parole on the first-degree murder offense (Count I) and ten years on the armed criminal action offense, with these concurrent sentences running concurrently with any sentence that Petitioner was then serving. (J., Legal File, Resp't Ex. B, at 50-51; Sentencing Tr., Resp't Ex. A, at 395-96.)

In his direct appeal, Petitioner raised two points. First, Petitioner argued that his Sixth and Fourteenth Amendment rights to due process and a fair trial were violated because the first-degree murder verdict director, Instruction No. 8, did not ascribe the element of deliberation to Petitioner personally, which relieved the State of its burden of proving each and every element of the crime. (Pet'r Br., Resp't Ex. C, at 11, 13.) Second, Petitioner urged that his Sixth and Fourteenth Amendment rights to confrontation, due process, and a fair trial were violated, by the trial court's overruling of Petitioner's objection to the testimony of Weakly and Debose regarding what Henderson had told them about the shooting, because such testimony was hearsay that did not fall within the co-conspirator exception and improperly bolstered

Henderson's testimony, when Henderson's "credibility was suspect under the circumstances." (Id. at 12, 18.)

The Missouri Court of Appeals for the Southern District of Missouri affirmed the judgment in a published opinion. (**State v. McFarland**, No. SD28375, Opinion, dated Aug. 14, 2008, Resp't Ex. E.) After noting that Petitioner did not challenge the sufficiency of the evidence, the state appellate court found the facts as follows.

> Following an altercation, [Petitioner] expressed several threats to "get" and even "kill" 17-year-old [Victim]. [Petitioner] told . . . Weakly that he was going to take . . . Henderson to get [Victim], and about a week later, he showed Weakly a silver 380 caliber handgun.

> The day after Christmas, [Petitioner] asked . . . Anders for some .38 or 380 caliber shells. When Anders said he would have to find them, [Petitioner] decided to drive Anders to Wal-Mart instead. Already in [Petitioner]'s car were Weakly and Henderson, whom Anders did not know. Anders never saw Henderson's face because when Anders got in, Henderson pulled his hood up around his head. Since it was not cold, Anders felt Henderson was trying to hide his face.

> They drove to Wal-Mart. Using [Petitioner]'s money and at his request, Anders entered the store, bought 100 rounds of ammunition, returned to the car, and gave it to [Petitioner]. The ammunition was passed to Henderson, who loaded a silver handgun, pocketed additional shells, and gave the rest back to Weakly.

> The men took Anders home. [Victim], whose mother dated Anders, was there. He and [Petitioner] agreed to meet in 10-20 minutes at another house. [Petitioner] and Henderson took Weakly to [Petitioner]'s brother's house and went to meet [Victim]. En route, [Petitioner] offered Henderson $2500 and some crack cocaine to shoot [Victim]. Henderson said he would rather just beat [Victim] up, which did not satisfy [Petitioner], who said [Victim] was "a problem" and "I need to just get him out [of] the way." After smoking more of [Petitioner]'s dope, Henderson agreed. [Petitioner] said he would park one street over; Henderson should hide behind a house; and when [Victim] arrived, "just shoot him, kill him."

Henderson did as he was told. [Victim] drove up, parked, and got out. Henderson surprised him from behind. Begging Henderson not to shoot, [Victim] tried to run, but Henderson fatally shot him in the chest and head. [Petitioner], who had watched from a distance to be sure Henderson did it, came running up the street. Together they fled, and after picking Weakly back up, drove to Sikeston.

**Id.** at 1-3 (twentieth alteration in original).

With respect to Petitioner's first point, which challenged the first-degree murder verdict director, the state appellate court found that

The parties agree that the verdict director for first-degree murder did not comply with MAI-CR3d 304.04, in that the element of deliberation was not personally ascribed to [Petitioner]. *See* State v. Davis, 210 S.W.3d 229, 239 (Mo. [Ct.] App. 2006); MAI-CR3d 304.04, Note on Use 7(b). [Petitioner] concedes this error was not preserved for appeal and any review must be for plain error. Yet instructional error seldom is plain error. State v. Busch, 920 S.W.2d 565, 569 (Mo. [Ct.] App. 1996). [Petitioner] must demonstrate more than mere prejudice. "In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict." Id. (quoting State v. Nolan, 872 S.W.2d 99, 103 (Mo. banc 1994)[, overruled in part on other grounds by Deck v. State, 68 S.W.3d 418, 427 (Mo. 2002) (en banc)].

A verdict director omitting an essential element that was seriously disputed rises to the level of plain error. State v. Cooper, 215 S.W.3d 123, 126 (Mo. banc 2007). "On the other hand, if the evidence establishing the omitted element was not in dispute, the jury's verdict would not have been affected and no plain error relief need be given." Id. (citing Nolan, 872 S.W.2d at 103 and Busch, 920 S.W.2d at 569-70). [Petitioner] acknowledges the latter-quoted rule, yet he does not contend that deliberation was "in dispute." To the contrary, defense counsel argued in closing that the case was "not about [whether Victim] was killed, *or whether it was cool reflection if he was killed*, it was whether there was an agreement" between [Petitioner] and Henderson (our emphasis). [Petitioner] did not contest the element of deliberation, or "cool reflection" as it is defined by statute and instruction. Rather, he denied that he participated in the crime at all.

Our courts have found no prejudice or manifest injustice from instructional error unrelated to the disputed matters at trial. Indeed, <u>Busch</u> mirrors this case – the same offense; the same instructional error; but no plain error since "[Petitioner] did not dispute the issue of deliberation, rather, he implied he did not participate in the murder at all." 920 S.W.2d at 570. <u>See also</u> <u>Davis</u>, 210 S.W.3d at 237-40 (same offense; same instructional error; same reasoning and result). Petitioner has not carried his burden to show plain error. Point I fails.

**State v. McFarland**, No. SD28375, Opinion, dated Aug. 14, 2008, Resp't Ex. E, at 3-5 (three footnotes omitted; emphasis in original; eighth alteration in original).

With respect to the second point, which challenged the admission of the hearsay testimony of Weakly and Debose regarding what Henderson had said to them about the shooting, the state appellate court "decline[d] to consider the bolstering complaint since [Petitioner] did not assert it below and ha[d] not requested plain error review." (<u>Id.</u> at 5.) In a footnote the Missouri Court of Appeals acknowledged that Petitioner had also

suggest[ed] a Confrontation Clause violation, but waive[d] that claim by failing to pursue or develop it in the brief's argument portion. <u>See</u> <u>State v. McDaniel</u>, 236 S.W.3d 127, 137 (Mo. [Ct.] App. 2007). Moreover, [Petitioner]'s opportunity to cross-examine Henderson at trial satisfied his right to confrontation. <u>See</u> <u>State v. Blankenship</u>, 830 S.W.2d 1, 12 (Mo. banc 1992); <u>State v. Howell</u>, 226 S.W.3d 892, 896 (Mo. [Ct.] App. 2007).

**State v. McFarland**, No. SD28375, Opinion, dated Aug. 14, 2008, Resp't Ex. E, at 5 n.4.

Pointing out that Petitioner "must show both error and resulting prejudice before reversal is warranted," the state appellate court denied this point upon finding

Weakly testified that, on their drive back to Sikeston, Henderson said he had shot someone. [Petitioner] claims the co-conspirator exception did not authorize this hearsay statement since the crime already was completed. This court rejected a similar argument in <u>Coday v. State</u>, 179 S.W.3d 343 (Mo. [Ct.] App. 2005):

- 13 -

Statements of one conspirator are admissible against another under the co-conspirator exception to the hearsay rule, even when the conspirators are not charged with conspiracy. Coday argues that this hearsay exception does not apply because Victim's murder had already been committed when the conversation between Greathouse and Coday occurred. If a conspiracy continues for any purpose, however, statements made after the commission of the crime are still admissible pursuant to this exception to the hearsay rule.

Id. at 357 (internal citations omitted). Henderson agreed to shoot [Victim] in exchange for money and drugs. At the time of his statement, he had not yet been "paid" for his part in the crime. Thus, the conspiracy was not concluded.

Moreover, even erroneously admitted evidence is not prejudicial if similar evidence was properly admitted or came into the case without objection or contradiction. State v. Collis, 139 S.W.3d 638, 641 (Mo. [Ct.] App. 2004); State v. Evans, 992 S.W.2d 275, 292 (Mo. [Ct.] App. 1999) [(per curiam)]. Everyone agreed that Henderson shot [Victim]. Henderson so testified without objection or contradiction. [Petitioner] has not shown this challenged testimony, which named neither [Petitioner] nor [Victim], to be other than cumulative evidence of an uncontested fact.

The same can be said for D[e]bose's testimony, admitted over [Petitioner]'s objection, that Henderson told D[e]bose that he "walked up on the car, he shot off in the car, and the guy made a noise, and he shot him, and he ran off." This does not mention [Petitioner] either, and merely corroborates Henderson's unchallenged testimony on matters undisputed at trial. "'[I]n such a situation there is no prejudice and no reversible error.'" Evans, 992 S.W.2d [at] 292 (quoting State v. Martinelli, 972 S.W.2d 424, 436 (Mo. [Ct.] App. 1998)).

**State v. McFarland**, No. SD28375, Opinion, dated Aug. 14, 2008, Resp't Ex. E, at 6-7 (one footnote omitted) (fifteenth alteration in original).

Petitioner did not seek further judicial review within fifteen days of the issuance of the state appellate court's decision, see Mo. Sup. Ct. R. 83.02, and the Missouri Court of Appeals issued its mandate on September 2, 2008. (Sep. 2, 2008 docket entry in State v. McFarland,

No. SD28375 (Mo. Ct. App.) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do) (last visited Jan. 13, 2015).)

On October 22, 2008, Petitioner filed a pro se post-conviction motion pursuant to Missouri Supreme Court Rule 29.15,[4] setting forth twenty-three claims. (Legal File, Resp't Ex. G, at 4-24.) Petitioner pursued thirteen claims that his trial attorney provided ineffective assistance of counsel, five claims that his attorney on direct appeal provided ineffective assistance of counsel, two claims of prosecutorial misconduct, two claims challenging jury selection, and one claim of judicial bias or misconduct. (Id.) In relevant part, in his first claim of prosecutorial misconduct (claim 8h in his pro se post-conviction motion, which was included in his amended post-conviction motion), Petitioner contended that the prosecutor knowingly used perjured testimony by knowingly presenting false testimony of two key witnesses. (Id. at 11.) In support of this claim, Petitioner referred to specific trial testimony of Henderson and Weakly and argued it contrasted with other specified trial and deposition testimony of those two witnesses, as well as trial testimony of other witnesses and certain exhibits, such as the death certificate. (Id. at 15-18.) For his second claim of prosecutorial misconduct (claim 8L in his pro se post-conviction motion, which was included in his amended post-conviction motion), Petitioner referred to Weakly's allegedly false testimony describing the gun; to Henderson's allegedly false testimony about how much crack cocaine he was to receive for the shooting and about Petitioner's use of a telephone to talk to Victim

---

[4] A judge other than the judge who had presided over Petitioner's trial proceeding presided over Petitioner's post-conviction motion proceeding. See Oct. 22 , 2008, and Nov. 3, 2008, docket entries, Legal File, Resp't Ex. G, at 1.

"to set up the hit"; to the prosecutor's failure to strike Huck for cause; to the prosecutor's alleged striking of all black individuals from the jury panel; to the prosecutor's alleged withholding of favorable evidence by failing "to send all of the [S]tate[']s physical evidence to the state crime lab to be submitted for testing"; and to the prosecutor's alleged "[e]rror in admitting jury instruction number 8 which prejudiced" Petitioner. (Id. at 19-20.)

Through counsel, Petitioner subsequently filed an amended post-conviction motion, which set forth five ineffective assistance of trial counsel claims and included each of the claims set forth in Petitioner's pro se post-conviction motion, through the attachment and incorporation by reference of the pro se motion. (Pet'r Am. Post-Conviction Mot., Legal File, Resp't Ex. G, at 29-63.) The amended motion also included a request for an evidentiary hearing and a request that Petitioner be "personally present" at the hearing. (Id. at 31-35.)

Petitioner's trial attorney testified during the evidentiary hearing on Petitioner's post-conviction motion. (See Hr'g Tr., Resp't Ex. F.) With respect to Huck, the attorney stated he did not recall that Huck stated he could not be fair but "[w]e thought it would be wise to leave him on [the jury] because he knew Mr. Weakly and he would know . . . whether . . .he would lie in certain areas of his testimony." (Post-Conviction Mot. Hr'g Tr., Resp't Ex. F, at 8.) The attorney also testified that it appeared that Instruction No. 8 required, but did not have, an additional paragraph addressing Petitioner's deliberation to commit first-degree murder, and he had no strategic reason for not objecting to the Instruction No. 8 given to the jury. (Id. at 10.) He stated that the theory of defense was that Henderson was lying and committed the murder without any instruction from Petitioner to do so. (Id. at 24.) Petitioner's attorney also

testified that he and Petitioner "consulted extensively during the voir dire and . . . throughout trial." (Id. at 26.)  The attorney remembered discussing with Petitioner the fact that Huck was Weakly's coach and  explaining to Petitioner that he thought Huck's personal involvement might be beneficial; and that Petitioner did not say anything to counsel about Huck, while "other people on the jury panel [were] struck because [Petitioner] wanted them struck."  (Id. at 27.)  After the evidentiary hearing, the motion court denied Petitioner's post-conviction motion.  (J. and Findings of Fact and Conclusions of Law, filed Feb. 8, 2010, Legal File, Resp't Ex. G, at 64-78.)

Petitioner pursued two points in his post-conviction appeal.  (Pet'r Br., Resp't Ex. H.)  In his first point, Petitioner argued that he was denied the effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when his trial attorney failed to strike Huck for cause due to Huck's statement that he could not be fair.  (Id. at 13, 15.)  For his second point, Petitioner urged his Fifth, Sixth, and Fourteenth Amendment rights to the effective assistance of counsel were violated by his trial attorney's failure to object to Instruction No. 8, the verdict director for first-degree murder which failed to ascribe to Petitioner the element of deliberation.  (Id. at 14, 20.)

The Missouri Court of Appeals for the Southern District affirmed the motion court's decision in a published opinion.  (McFarland v. State, No. SD30445, Opinion, dated  Mar. 31, 2011,  Resp't Ex. J.)  In its opinion, the state appellate court summarized Petitioner's case as follows.

The record reveals that [Petitioner] was charged as a prior offender via

"Amended Information" on January 18, 2007, with one count of the class A felony of murder in the first degree, a violation of section 565.020, and one count of the unclassified felony of armed criminal action, a violation of section 570.015. The evidence at trial revealed that [Petitioner] hired . . . Henderson . . . to shoot . . . Victim . . . because of [Petitioner]'s belief that Victim was behind a previous incident in which [Petitioner] was robbed of drugs and money. Victim died as a result of the shooting. At trial, [Petitioner] denied he participated in the crime at all. *See* <u>State v. McFarland</u>, 259 S.W.3d 621, 624 (Mo. [Ct.] App. 2008). Following a jury trial, [Petitioner] was sentenced to life imprisonment without the possibility of parole and ten years, respectively. <u>Id.</u> [Petitioner]'s conviction was upheld on direct appeal . . . . <u>Id.</u> at 625.

**McFarland v. State**, No. SD30445, Opinion, dated Mar. 31, 2011, Resp't Ex. J, at 2 (one

footnote omitted).

Citing to **Strickland v. Washington**, 466 U.S. 668 (1984), the state appellate court

found without merit each of Petitioner's two points challenging the effectiveness of his trial

attorney's representation. As to point one, challenging his trial attorney's failure to strike Huck

for cause, the Missouri Court of Appeals stated:

During voir dire, the State asked the jury venire if any of them were familiar with a potential witness named . . . Weakly. The following colloquy occurred between the State and . . . Huck:

| . . . HUCK: | I coached him in baseball, years ago. |

| THE STATE: | How long ago was that, you think? |

| . . . HUCK: | Oh, maybe 15 years ago. |

| THE STATE: | Anything about your relationship at that time with . . . Weakly that would, that wouldn't you, wouldn't allow you to evaluate the testimony or anything else, or sway you one way or the other? |

| . . . HUCK: | No. |

| THE STATE: | You can give both sides in this case a fair hearing in that relationship? |
|---|---|
| . . . HUCK: | No. |
| THE STATE: | You don't think so, okay.  You said it was basketball? |
| . . . HUCK: | Baseball. |
| THE STATE: | Baseball.  And you said 20 years ago? |
| . . . HUCK: | 15 or 20.  It was a long time ago. |

. . . Huck also indicated that he knew one of the highway patrol officers who was expected to testify, but that he only knew him "kind of casually" such that he "wouldn't have a problem" evaluating his testimony.  [Petitioner]'s counsel . . . did not individually question . . . Huck.  At the close of voir dire, [Petitioner's counsel] moved to strike [several] jurors for cause, but . . . Huck was not one of those jurors.  As a result, . . . Huck sat on [Petitioner]'s petit jury.

At the [motion court's] evidentiary hearing . . . , [Petitioner's trial attorney] related that he

> [did] not recall [Huck] saying he could not give [Petitioner] a fair trial.  [However, [Petitioner's trial attorney] related that he] thought it would be wise to leave [Huck] on because [Huck] knew . . . Weakly and [. . . Huck] would know that – that his – whether he . . . would lie in certain areas of his testimony.

[Petitioner's trial attorney] also testified he "consulted extensively [with [Petitioner]] during the voir dire and . . . throughout the trial" and "remember[ed] discussing with [[Petitioner]], . . . Huck's – the fact that [Huck] was . . . Weakly's coach.  There were other . . . people on the jury panel that we struck because [[Petitioner]]wanted them struck." [Petitioner's trial attorney] stated that he had "explained to [[Petitioner] that he] thought [ . . . Huck's] personal involvement might be beneficial, but [he] didn't catch the other phrases apparently."

The motion court concluded [Petitioner's trial attorney] "decided not to strike . . . Huck because . . . Huck knew a State's witness, and the attorney

believed that . . . Huck would know that the witness was an untruthful person, thereby helping [Petitioner]'s cause," such that his failure to request to strike . . . Huck was reasonable trial strategy. We agree.

"The decision to strike a venireperson is generally a matter of trial strategy" and "[r]easonable decisions regarding trial strategy cannot be the basis for an ineffective assistance of counsel claim." Boyd v. State, 86 S.W.3d 153, 158 (Mo. [Ct.] App. 2002). Further, "there is a strong presumption that the challenged action constitutes sound trial strategy, thereby rendering it reasonably skillful and diligent." Tripp v. State, 958 S.W.2d 108, 111 (Mo. [Ct.] App. 1998). "Tactical errors do not establish ineffective assistance of counsel." Id.; see State v. Cage, 945 S.W.2d 636, 640 (Mo. [Ct.] App. 1997). "Trial counsel is not judged ineffective constitutionally simply because in retrospect his or her decision may seem to be an error in judgment." Tripp, 958 S.W.2d at 111.

It is not lost on this Court that . . . Huck was initially responding to the State's poorly phrased question, and it appears . . . Huck's response was ambiguous relative to his ability to be a fair arbiter of justice because he initially acknowledged in the negative that there was not anything "about [his] relationship . . . with . . . Weakly that . . . wouldn't allow [him] to evaluate the testimony or anything else, or sway [him] one way or the other;" yet, he then related he could not give "both sides in this case a fair hearing . . . ." Of course, neither the State's attorney nor [Petitioner's attorney] asked for clarification of . . . Huck's remarks. Nevertheless, it does not necessarily follow that had [Petitioner's attorney] caught . . . Huck's answer that he could be faulted for refraining from asking . . . Huck to clarify his response. It is our view that there may be tactical reasons not to have the venire exposed to possibly damaging remarks arising from such a clarification. [Petitioner's attorney] explained that his strategic reason not to strike . . . Huck was based on his belief that if . . . Huck knew of . . . Weakly's poor character it would follow that . . . Huck would not find . . . Weakly's testimony to be credible, which would aid [Petitioner]'s case. "Trial counsel's removal of a juror is a matter of reasonable trial strategy." Cage, 945 S.W.2d at 640. Furthermore, [Petitioner's attorney] related he discussed the potential strikes during voir dire with [Petitioner], and [Petitioner] expressed no specific concern with . . . Huck being a juror. "When alleging prejudice toward a defendant, it must clearly appear from the evidence that the venireperson was in fact prejudiced" and a prospective juror's qualifications "are not determined conclusively by a single response, but are made on the basis of the entire examination." Hightower v. State, 43 S.W.3d 472, 476 (Mo. [Ct.] App. 2001) (internal citation omitted). It was not clear that . . . Huck was

prejudiced against [Petitioner]. "[Petitioner] has failed to overcome the 'strong presumption' that his trial counsel's conduct constituted sound trial strategy." Tripp, 958 S.W.2d at 112. The motion court did not err in denying [Petitioner]'s request for postconviction relief on the basis that his trial counsel did not strike . . . Huck for cause. Point I is denied.

**McFarland v. State**, No. SD30445, Opinion, dated Mar. 31, 2011, Resp't Ex. J, at 4-8 (seventh, tenth, sixteenth, twenty-first, twenty-second, twenty-third, twenty-sixth, thirtieth, thirty-first, and thirty-second alterations in original) (one footnote omitted). The state appellate court also noted that "Huck's responses during voir dire were ambiguous." **Id.** at 7-8 n.3. Therefore, that court concluded, no presumption of prejudice applied in this case. **Id.** at 8 n.3.

With respect to Petitioner's second point in his post-conviction appeal, that his trial attorney provided ineffective assistance of counsel by failing to object to the first-degree murder verdict director, Instruction No. 8, the state appellate court stated:

In [Petitioner]'s underlying criminal trial, the verdict director for first-degree murder did not comply with Missouri Approved Instruction ("MAI")-CR3d 304.04, "in that the element of deliberation was not personally ascribed to [Petitioner]." McFarland, 259 S.W.3d at 623. At the evidentiary hearing held in conjunction with [Petitioner]'s Rule 29.15 motion, [Petitioner's attorney] admitted that the Notes on Use 7(b) for MAI-CR3d 304.04 appeared to require an additional paragraph in the verdict director requiring a finding that [Petitioner] committed the crime with deliberation. He stated that no such paragraph appeared in Instruction No. 8, and he had no "strategic reason" for failing to object to that instruction.

We note that on direct appeal to this Court [Petitioner] argued "the verdict director for first-degree murder did not comply with MAI-CR3d 304.04, in that the element of deliberation was not personally ascribed to [Petitioner]." McFarland, 259 S.W.3d at 623. The State conceded error in the wording of the verdict director, but asserted [Petitioner] suffered no prejudice as a result of the error. Id. In denying plain error review, this Court observed that in the trial

below,

> defense counsel argued in closing that the case was 'not about [whether Victim] was killed or whether it was cool reflection if he was killed, it was whether there was an agreement' between [Petitioner] and . . . Henderson. [Petitioner] did not contest the element of deliberation, or 'cool reflection' as it is defined by statute and instruction. Rather, he denied that he participated in the crime at all.

Id. at 624 (emphasis and internal footnote omitted). Hence, because [Petitioner] did not contest the issue of deliberation there was "no prejudice or manifest injustice from instructional error unrelated to the disputed matters at trial" and this Court denied [Petitioner] relief in his direct appeal. id.

> In the present proceedings, the motion court determined that

> [j]just as the Court of Appeals in McFarland found no plain error in the giving of the murder verdict director, this court finds that the failure of the attorney to object to Instruction No. 8 did not so undermine the functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

Consequently, the motion court denied [Petitioner]'s Rule 29.15 motion.

The motion court's ruling is supported by Leisure v. State, 828 S.W.2d 872, 874 (Mo. banc 1992), which found that "[i]ssues decided upon direct appeal cannot be relitigated on a theory of ineffective assistance of counsel in a [postconviction] proceeding." "Further analysis would be unnecessary but for the Supreme Court's later ruling in Deck . . ., [supra]." Shifkowski v. State, 136 S.W.3d 588, 590 (Mo. [Ct.] App. 2004). Interpreting the Deck ruling, this Court in Skipper v. State, 209 S.W.3d 552, 554 (Mo. [Ct.] App. 2006), observed that in "considering whether plain error occurred in a direct appeal, the determination that must be made is whether manifest injustice or miscarriage of justice occurred by reason of erroneous rulings at trial." Id. "Whereas, in reviewing a [postconviction] judgment directed to a claim of ineffective assistance of counsel, the issue is not whether a just result was reached, but whether, through dereliction of counsel, the reviewing court's confidence is undermined in the fairness of the proceeding." Id. Nevertheless,

> [n]otwithstanding the different standards of review for

determining plain error on direct appeal and considering claims of [postconviction] relief when there are allegations of ineffective assistance of counsel, it is only in rare cases that those differences would cause a court to grant [postconviction] relief after it has denied relief on direct appeal.

Id. Here, we do not perceive [Petitioner]'s claim of ineffective assistance of trial counsel to be one of those rare cases. See Shifkowski, 136 S.W.3d at 590. As previously related, at trial [Petitioner] had not contested the element of deliberation, or "cool reflection" as it is defined by statute and instructions, and, indeed, [Petitioner] denied any participation in the crime. As already stated, "[o]ur courts have found no prejudice or manifest injustice from instructional error unrelated to the disputed matters at trial." McFarland, 259 S.W.3d at 624; see also State v. Wurtzberger, 40 S.W.3d 893, 898 (Mo. banc 2001) (holding that "it is well-settled that a trial court's failure to correctly instruct the jury on an element of the crime charged that was undisputed at trial cannot result in manifest injustice"). Therefore, Leisure, 828 S.W.2d at 874, is still controlling in this situation, and "[w]hen, as here, a plain error point was reviewed on direct appeal and the appellate court concluded that no error occurred, the issue cannot be relitigated in a [postconviction] proceeding." Shifkowski, 136 S.W.3d at 591; see Ringo v. State, 120 S.W.3d 743, 744-46 (Mo. banc 2003). Point II is denied.

**McFarland v. State**, No. SD30445, Opinion, dated Mar. 31, 2011, Resp't Ex. J, at 8-11 (ninth, fifteenth, sixteenth, nineteenth, twentieth through twenty-second, and twenty-fifth through twenty-seventh alterations in original). Petitioner did not pursue further review of the post-conviction motion court's judgment. (See docket sheet entries for No. SD30445 (Mo. Ct. App.) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do) (last visited Jan. 13, 2015).) The state appellate court issued its mandate on April 18, 2011. (See Mandate, dated Apr. 18, 2011, Resp't Ex. K.)

Petitioner filed his federal habeas petition in which he presents five claims. First, Petitioner contends that his rights to due process and to confront the witnesses against him

were violated by the trial court's admission of Weakly's and Debose's testimony regarding statements Henderson made to them about the shooting. (Pet'r Pet. at 6 [Doc. 4 at 5].) Next, Petitioner argues his trial attorney provided ineffective assistance of counsel by failing to strike Huck for cause. (Id. at 7.) For his third ground for relief, Petitioner urges that his trial attorney provided ineffective assistance of counsel, a violation of the Sixth Amendment, by failing to object to the first-degree murder verdict director, Instruction No. 8. (Id. at 9.) In his fourth ground, Petitioner argues that his right to due process was violated by the prosecutor withholding the autopsy report. (Id. at 11.) For his fifth and final ground, Petitioner contends that his Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, and the effective assistance of his trial attorney were violated by his trial attorney's failure to object to Goin's testimony regarding the death certificate and by that attorney's failure to object to the admission into evidence of that certificate. (Id. at 16.)

Respondent counters that the fourth and fifth grounds for relief are procedurally barred, and that all of Petitioner's grounds are without merit.

The undersigned will address the procedural issues first and then the merits of the grounds that may be reached on the merits.

## DISCUSSION

Procedural Default. As noted earlier, Petitioner urges in his fourth ground for habeas relief that his right to due process was violated by the prosecutor withholding the autopsy report. For his fifth ground, Petitioner contends that his Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, and the effective assistance of his trial attorney

were violated by his trial attorney's failure to object to Goin's testimony regarding the death certificate, and by his trial attorney's failure to object to the admission into evidence of the death certificate.  Respondent counters that ground four is procedurally barred and may not be considered on its merits because Petitioner did not present that claim to any state court.  With respect to ground five, Respondent contends it is procedurally defaulted because Petitioner failed to pursue it in his post-conviction appeal.

To avoid procedurally defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim.  **Wemark v. Iowa**, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting, in part, <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982) (per curiam)); <u>accord</u> **Baldwin v. Reese**, 541 U.S. 27, 29 (2004).  "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition."  **Wemark**, 322 F.3d at 1021 (quoting <u>Joubert v. Hopkins</u>, 75 F.3d 1232, 1240 (8th Cir. 1996)).  A petitioner must also exhaust his state remedies, by giving "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  **Grass v. Reitz**, 643 F.3d 579, 584 (8th Cir. 2011) (internal quotation marks omitted) (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999)).  Claims that have not been exhausted and fairly presented to the state courts are procedurally defaulted.  **Wemark**, 322 F.3d at 1022 (quoting <u>Gray v. Netherland</u>, 518 U.S. 152, 161-62 (1996)).

Missouri requires the raising of constitutional claims at the first available opportunity. See **In re J.M.N.**, 134 S.W.3d 58, 73 (Mo. Ct. App. 2004); **In re T. E.**, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001). Alleged trial errors, including constitutional claims of trial error, must be raised on direct appeal; for "[p]ost-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review." **State v. Clark**, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993); accord **State v. Twenter**, 818 S.W.2d 628, 636 (Mo. 1991) (en banc) (a post-conviction proceeding "is not a substitute for direct appeal, and matters that properly should have been raised by direct appeal may not be litigated in a post-conviction proceeding"). "If the allegations of trial error are constitutional violations, they are not cognizable [in a post-conviction proceeding] unless exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal." **Clark**, 859 S.W.2d at 789; accord **Amrine v. State**, 785 S.W.2d 531, 536 (Mo. 1990) (en banc); **Allen v. State**, 903 S.W.2d 246, 247 (Mo. Ct. App. 1995) (per curiam).

A claim of prosecutorial misconduct must be raised on direct appeal, and is not an issue for a Rule 29.15 proceeding, when the claim arises out of circumstances "apparent at trial," such as improper argument by the prosecutor. See **Tisius v. State**, 183 S.W.3d 207, 212 (Mo. 2006) (en banc). A prosecutorial misconduct claim may, however, be considered during a post-conviction proceeding when the alleged misconduct is "serious and would not be apparent during trial," such as when the misconduct involves the withholding of evidence. **Id.** Here, Petitioner claims the prosecutor did not disclose an autopsy report in a criminal case involving the fatal shooting of Victim. The undersigned is not convinced that such a failure by a

prosecutor would not be apparent prior to or at a criminal trial arising out of that shooting, but will consider it as a prosecutorial misconduct claim of withholding evidence that may be presented for the first time during a post-conviction motion proceeding.

In addition to presenting such a claim, Petitioner must also present his ineffective assistance of counsel claims in a post-conviction motion proceeding because that proceeding is the exclusive procedure for pursuing in state court any ineffective assistance of counsel claim; a motion court's decision on such a motion is subject to appeal; and successive post-conviction motions are not permitted. Mo. S. Ct. Rule 29.15(a), 29.15(k); 29.15(l); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006). Any claim that should have been but was not presented in a post-conviction motion or on appeal from a denial of a post-conviction motion is procedurally defaulted and may not be considered in a federal habeas proceeding. See **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (finding that claims not presented in an amended Rule 29.15 post-conviction motion or appeal from the denial of that motion are procedurally defaulted).

The prosecutor's alleged failure to disclose or provide a copy of the autopsy report to Petitioner as now asserted in Petitioner's fourth ground was not presented in either Petitioner's pro se motion for post-conviction relief or Petitioner's amended motion for post-conviction relief. Nor was it presented in Petitioner's post-conviction appeal. While Petitioner's ineffective assistance of counsel claim arising out of his trial attorney's failure to object to Goin's testimony and to the admission of the death certificate was pursued in his amended post-conviction motion, as the third claim for relief in that motion, Petitioner did not present

that claim in his post-conviction appeal. Under the circumstances, Petitioner has not complied with Missouri's requirements for the presentation to the state courts of the claims in grounds four and five of his federal habeas petition; Petitioner does not now have a state court remedy for presentation of those claims; and those grounds for relief are, therefore, procedurally defaulted. See **id.** at 856; **Sweet v. Delo**, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (finding two of the petitioner's federal habeas claims defaulted because they were not presented at any stage of his post-conviction proceedings and one of the petitioner's claims defaulted because he "failed to raise it in his post-conviction appeal").

Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court. **Sawyer v. Whitley**, 505 U.S. 333, 338-39 (1992); accord **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007) ("Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims"). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] .. . 'impeded [his] efforts to comply with the State's procedural rule.'" **Maples v. Thomas**, 132 S. Ct. 912, 922 (2012) (alterations in original) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)). There is no exhaustive catalog of the objective impediments "and the precise contours of the cause requirement have not been clearly defined." **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir.

1999).

Petitioner has not demonstrated any cause for his failure to present to the state courts the prosecutorial misconduct and ineffective assistance of trial counsel claims he now pursues as grounds four and five in his federal habeas petition. Because no cause has been established, it is unnecessary to consider whether Petitioner has demonstrated prejudice. **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

The merits of Petitioner's defaulted claims may be reached, despite the absence of a showing of cause and prejudice for his procedural default, if he establishes that a failure to consider the claims' merits will result in a fundamental miscarriage of justice. That exception to a claim's procedural bar "requires a habeas petitioner to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." **Abdi v. Hatch**, 450 F.3d 334, 338 (8th Cir. 2006). Petitioner must show not only new evidence, but "that 'it is more likely than not that no reasonable [fact-finder] would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)); accord **House v. Bell**, 547 U.S. 518, 536-39 (2006) (Schlup standard applies to determine whether defaulted claims in a first federal habeas proceeding should be considered based on actual innocence). Evidence is "new" for purposes of this test "if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" **Osborne**, 411 F.3d at 920 (quoting Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001)). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to

establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting <u>Schlup</u>, 513 U.S. at 316).

Petitioner has not submitted any new evidence of his actual innocence so as to permit the undersigned to consider the merits of Petitioner's defaulted claims.

Under the circumstances, grounds four and five are procedurally barred due to Petitioner's procedural default and failure to demonstrate either cause and prejudice or a fundamental miscarriage of justice to support consideration of the merits of those procedurally barred claims. Therefore, the undersigned will recommend the denial of those claims without further consideration.

<u>Merits</u>. In his first ground for relief, Petitioner argues that the trial court violated Petitioner's right to due process and to confront the witnesses against him by admitting Weakly's and Debose's testimony about statements Henderson made to them about the shooting. For his second ground, Petitioner contends that his trial attorney provided ineffective assistance by failing to strike Huck for cause. Petitioner urges, in his third ground, that his trial attorney provided ineffective assistance by failing to object to the first-degree murder verdict director, Instruction No. 8. Respondent contends these grounds lack merit.

<u>Standard of Review.</u> "In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] to exercise only limited and deferential review of underlying state court decisions." **Lomholt v. Iowa**, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner

unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams v. Taylor**, 529 U.S. 362, 413 (2000) ("**Taylor**"). If the state court's decision is not "contrary to" clearly established law, then the standard of "unreasonableness" applies and is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" **Williams v. Roper**, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Harrington v. Richter, 131 S. Ct. 770, 786 (2011)). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." **Taylor**, 529 U.S. at 407-08; see also **id.** at 413. "The unreasonable application inquiry is an objective one." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009).

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." **Cullen v. Pinholster**, 131 S. Ct. 1388, 1398 (2011). Additionally, this Court's review is limited to

consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits.  **Greene v. Fisher**, 132 S. Ct. 38 (2011) (relying on <u>Cullen</u>, <u>supra</u>); accord **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010) ("[o]nly rulings in [United States] Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point" (citations omitted)).  The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record."  **Ryan v. Clarke**, 387 F.3d 785, 790 (8th Cir. 2004) (internal quotation marks omitted) (quoting <u>Jones v. Luebbers</u>, 359 F.3d 1005, 1011-12 (8th Cir. 2004)).  Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004).  Moreover, the presumption of

correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels. **Smulls**, 535 F.3d at 864-65.

Admission of Hearsay Testimony (Ground One).   In ground one, Petitioner contends his rights to due process and to confront the witnesses against him were violated by the admission of Weakly's and Debose's testimony regarding statements Henderson made to them about the shooting.   Respondent urges this ground lacks merit because the admission of evidence is a question of state law not subject to federal habeas review; the admission of this testimony was not so prejudicial as to violate Petitioner's right to due process; and the admission of the testimony did not violate Petitioner's right to confrontation because Henderson testified and was subject to cross-examination during trial.

As to ground one, Petitioner raised on direct appeal his contention that the trial court violated his rights to confrontation, due process, and a fair trial by admitting over Petitioner's objection Weakly's and Debose's testimony about what Henderson had told them about the shooting, citing **Crawford v. Washington**, 541 U.S. 36 (2004), in relevant part, as support for his argument.   The Missouri Court of Appeals concluded that the hearsay testimony was admissible through the co-conspirator exception to the hearsay rule in that the crime was not complete at the time Henderson made the statements because, at that time, Henderson had not been fully paid for his part in the crime; the hearsay statements were also admissible because they were cumulative evidence of the uncontested fact that Henderson shot Victim; and the statements' admission did not violate Petitioner's right to confrontation because he had the opportunity during trial to cross-examine Henderson.   **State v. McFarland**, No. SD 28375,

Opinion, dated Aug. 14, 2008, Resp't Ex. E, at 5-7 and 5 n.4.

The undersigned cannot consider the state court's conclusions that Henderson's challenged statements to Weakly and Debose fell within the co-conspirator exception to the hearsay rule because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." **Estelle v. McGuire**, 502 U.S. 62, 67-68 (1991). A state's court's challenged evidentiary ruling becomes subject to federal habeas review

> only when "the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process." Wallace v. Lockhart, 701 F.2d 719, 724 (8th Cir. 1983). Due process is denied when the error is "gross, conspicuously prejudicial or of such import that the trial was fatally infected." Rhodes v. Foster, 682 F.2d 711, 714 (8th Cir. 1982).

**Griffin v. Delo**, 33 F.3d 895, 904 (8th Cir. 1994). The showing of prejudice required to establish a due process violation by a state court's evidentiary ruling is greater than the showing of prejudice needed to support a finding of plain error on direct appeal. **Id.** at 905. Because Weakly's and Debose's testimony about Henderson's statements regarding the shooting were cumulative of Henderson's own trial testimony about the shooting, the admission of the challenged testimony did not fatally infect Petitioner's trial.

The admission of this challenged testimony also did not violate Petitioner's federal constitutional right to confrontation. While the confrontation clause bars the admission of testimonial statements of a witness who does not appear at trial and who has not provided an opportunity for cross-examination, **Crawford**, 541 U.S. at 50-51, 54-55, 60-65, and 68-69, Henderson appeared as a witness at trial and was subject to cross-examination by Petitioner. Therefore, the admission of the testimony did not violate Petitioner's right to confront

witnesses against him.  **Id.** at 59 n.9 ("we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . .  The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it").

Therefore, the state court decision upholding the admission of Weakly's and Debose's challenged testimony was not contrary to or an unreasonable application of clearly established federal law.  Nor did that decision involve an unreasonable determination of the facts in light of the available evidence.

Ground one should be denied as without merit.  The remaining two claims, grounds two and three, present claims that Petitioner's trial attorney provided ineffective assistance of counsel.

Standard of Review - Ineffective Assistance of Counsel Claim.  An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel.  **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)).  In **Strickland**, supra, the Supreme Court established a two-part test for determining whether or not an attorney provided effective assistance of counsel.  The petitioner must establish both deficient performance, i.e., that "counsel's representation fell below an objective standard of reasonableness," and prejudice, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  **Strickland**, 466 U.S. at 687-88, 694.  Importantly, to prevail on an ineffective assistance of counsel claim in a § 2254 habeas case, Petitioner

must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance, because under [28 U.S.C.] § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. Rather, he must show that the [state appellate court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.

**Bell v. Cone**, 535 U.S. 685, 698-99 (2002) (one citation omitted); **Underdahl v. Carlson**, 381 F.3d 740, 742 (8th Cir. 2004).

For the performance prong of an ineffective assistance of counsel claim, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) ("**Armstrong**") (citing <u>Strickland</u>, 466 U.S. at 687-89). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting <u>Nolan v. Armontrout</u>, 973 F.2d 615, 618 (8th Cir. 1992)). The court is highly deferential in analyzing counsel's conduct and "'indulg[es] a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting <u>Middleton v. Roper</u>, 455 F.3d 838, 846 (8th Cir. 2006)).

To establish prejudice, there must be a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland**, 466 U.S. at 694; **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir. 2010) ("**Kemna**") (quoting <u>McCauley-Bey v. Delo</u>, 97 F.3d 1104, 1105 (8th Cir. 1996)). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'"

**Kemna**, 590 F.3d at 596 (quoting <u>McCauley-Bey</u>, 97 F.3d at 1105); <u>accord</u> **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 694). The petitioner bears the burden of showing such a reasonable probability, **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992); and, in determining whether or not there was prejudice, the federal habeas court must consider the totality of the evidence, **Kemna**, 590 F.3d at 596.

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. <u>See</u> **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. <u>See</u> **Strickland**, 466 U.S. at 697; **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

<u>Ineffective Assistance of Trial Attorney - Failure to Strike Juror for Cause (Ground Two).</u> For his second ground for federal habeas relief, Petitioner argues that his trial attorney provided ineffective assistance of counsel by failing to strike Huck for cause because the attorney admitted that he did not hear Huck state that he could not be fair and did not ask follow-up questions. Petitioner acknowledged that his trial attorney stated at the post-conviction motion hearing that he thought it wise to leave Huck on the panel because Huck knew Weakly and that Weakly might not be credible. Respondent contends that Petitioner is not entitled to relief on this ground because the Missouri Court of Appeals' decision upholding the motion court's denial of this claim was a reasonable interpretation of **Strickland**, and

Petitioner's counsel's testimony at the evidentiary hearing on the post-conviction motion established that leaving Huck on the jury was a matter of reasonable trial strategy.

The Missouri Court of Appeals noted that an attorney's decision whether or not to strike a venireperson is generally a matter of trial strategy and there is a strong presumption that counsel's challenged conduct constitutes sound trial strategy. The state appellate court agreed with the post-conviction motion court's conclusion that Petitioner's trial attorney's decision not to strike Huck was reasonable trial strategy due to Huck's familiarity with one of the State's witnesses and the attorney's belief that Huck would know that the witness was not a truthful person. The state appellate court further noted that "Huck's responses during voir dire were ambiguous" and "[i]t was not clear that . . . Huck was prejudiced against [Petitioner]."

A defendant in a criminal case is constitutionally entitled to have a trial before "'a panel of impartial, "indifferent" jurors.' Irvin v. Dowd, 366 U.S. [717,] 722 [(1961)]." **Murphy v. Florida**, 421 U.S. 794, 799 (1975); accord **Morgan v. Illinois**, 504 U.S. 719, 729-30 (1992) (the Constitution requires that a defendant in a criminal case be afforded an impartial jury). "Voir dire plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored." **Morgan**, 504 U.S. at 729 (internal quotation marks omitted) (quoting Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981) (plurality opinion)).

"Absent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel. Harris v. Housewright, 697 F.2d 202, 207-08 (8th Cir. 1982) [abrogation on other grounds noted in Wainwright v. Lockhart, 80 F.3d

1226, 1233 (8th Cir. 1996)]." **Johnson v. Armontrout**, 961 F.2d 748, 755 (8th Cir. 1992).

To establish an ineffective assistance of counsel claim based on a trial attorney's failure to strike for cause an allegedly biased juror, a petitioner must show "that [the juror] was impermissibly biased against [the petitioner], that [the trial attorney] was deficient in failing to strike [the juror] for cause, and that inclusion of [the juror] on the jury resulted in an unfair trial." **Williams v. Norris**, 612 F.3d 941, 955 (8th Cir. 2010) (discussing a federal habeas claim that a trial attorney failed to strike a juror who initially stated she could not consider life without parole in a case involving a request for the death penalty). "[A]n impermissible affirmative statement" is required to demonstrate actual bias; "an 'equivocal' statement is insufficient." **Id.** Petitioner has not made the required showing because he has not demonstrated that Huck was biased against Petitioner.

To prevail on a claim of ineffective assistance of counsel for the attorney's failure to strike a biased juror, a federal habeas petitioner must show that the juror was actually biased against the petitioner. **Goeders v. Hundley**, 59 F.3d 73, 75 (8th Cir. 1995) (discussing a juror's bias as an aspect of the prejudice element of an ineffective assistance of counsel claim) (citing Smith v. Phillips, 455 U.S. 209, 215 (1982)); see also **Johnson**, 961 F.2d at 754 ("When a defendant fails to object to the qualifications of a juror, he is without remedy only if he fails to prove actual bias"). Importantly,

> [w]hether a juror is biased against the defendant is a question of fact, and [a federal habeas court] will defer to the state court's finding [about juror bias] "if it is fairly supported by the record." Mack v. Caspari, 92 F.3d 637, 642 (8th Cir. 1996).

**Williams**, 612 F.3d at 955; see also **Wainwright v. Witt**, 469 U.S. 412, 426-30 (1985) (a federal habeas court must accord a presumption of correctness to a state court's findings regarding juror bias if those findings are supported by the record); **Patton v. Yount**, 467 U.S. 1025, 1036, 1038 (1984) (a state court's determination regarding a juror's impartiality is a factual finding entitled to the presumption of correctness).

With respect to the issue whether Huck was biased against Petitioner, the state court concluded both that Huck's responses during voir dire were ambiguous and that "[i]t was not clear that . . . Huck was prejudiced against [Petitioner]." The record supports these findings. After reporting that he had coached Weakly about fifteen or twenty years earlier, Huck responded, "no" to the prosecutor's confusing question whether there was "[a]nything about your relationship at that time with . . . Weakly that would, that wouldn't you, wouldn't allow you to evaluate the testimony or anything else, or sway you one way or the other?" The next question was also imprecise as to Huck's bias against Petitioner. The prosecutor asked whether Huck could give "both sides in this case a fair hearing in that relationship." Huck answered, "no." While Huck's one-word responses were clear, the questions he had been asked were not. The available record does not clearly convey the meaning of Huck's "no" responses. Under the circumstances, as the state appellate court concluded, the available record does not clearly demonstrate that Huck was biased against Petitioner. Petitioner has not demonstrated with clear and convincing evidence to the contrary that the state court incorrectly resolved the factual issue of Huck's bias. Therefore, the undersigned accepts the

factual finding that Huck was not biased.[5] See **Sanders v. Norris**, 529 F.3d 787, 791 (8th Cir. 2008) (finding that "the context of [a state court's conclusion that the petitioner had "failed to meet his burden of showing" a juror's actual bias] . . . was a finding that [the juror] was not actually biased," and the petitioner's lack of clear and convincing evidence to the contrary required acceptance of that factual finding).

Petitioner refers to **Johnson**, 961 F.2d at 754, for the proposition that it constitutes deficient performance under **Strickland** for an attorney not to inquire further when a venireperson provides an answer during voir dire that indicates bias. **Johnson** is inapposite, however, because in Petitioner's case the state appellate court found that Huck's responses during voir dire did not show bias, and that finding is presumed correct under the circumstances.

Petitioner also cites to a decision of the United States Court of Appeals for the Sixth Circuit, **Hughes v. United States**, 258 F.3d 453, 463 (6th Cir. 2001), in support of his position that the state court's factual finding that Huck did not exhibit clear bias due to ambiguous answers was objectively unreasonable because, as Petitioner urges, "Huck clearly and

_____

[5] To the extent the undersigned should consider whether Huck's bias should be implied or presumed, see, e.g., **Sanders v. Norris**, 529 F.3d 787, 791-94 (8th Cir. 2008), the undersigned concludes that the circumstances of Huck's alleged bias do not approach the extreme circumstances that may support a finding of implied or presumed bias. Specifically, this case does not involve Huck being an actual employee of the agency prosecuting Petitioner, a close relative of one of the participants in the trial, or a witness to or participant in the criminal transaction; and there is no indication that Huck was substantially emotionally involved in the incident at issue here. As noted in **Sanders**, 529 F.3d at 794, while in hindsight it may seem that Huck should not have been on Petitioner's jury, his presence was not "the type of 'extraordinary situation' in which the 'law conclusively presumes' bias. Phillips, 455 U.S. at 222 . . . (O'Connor, J., concurring)."

unambiguously said he could not be fair."  In addition to disagreeing with Petitioner's characterization of the clarity and ambiguity of Huck's statements during voir dire in light of the questions asked of him, the undersigned finds **Hughes** inapposite.  First, **Hughes** lacks precedential value in this case because it is a decision of an appellate court in a different circuit.  Additionally, the **Hughes** case was not a federal habeas case pursued under 28 U.S.C. § 2254, such as this one, to which the AEDPA's deferential and limited standard of review applies.  Therefore, the undersigned will not further consider **Hughes** in the context of this case.

Having concluded that the state court's determination that Huck was not impermissibly biased is fairly supported by the record, Petitioner's "Strickland claim cannot succeed because he cannot show that [Huck] was impermissibly biased, that his counsel's failure to object to [Huck] was deficient performance, or that empaneling [Huck] deprived him of a fair trial." **Williams**, 612 F.3d at 955.  The state court decision that Petitioner's trial attorney's failure to strike Huck for cause did not constitute the ineffective assistance of counsel is not contrary to or an unreasonable application of clearly established federal law, and is not based on an unreasonable determination of the facts.

Ground two should be denied on its merits.

Ineffective Assistance of Trial Counsel - Failure to Object to Improper Verdict Director (Ground Three).  For his third ground, Petitioner contends that his trial attorney provided ineffective assistance of counsel in failing to object to the first-degree murder verdict-director, Instruction No. 8.  In particular, Petitioner argues that his trial attorney should have objected

to that instruction because it did not ascribe the deliberation element to Petitioner personally. Respondent urges the state court decision upholding Petitioner's trial attorney's failure to object to Instruction No. 8 was reasonable under **Strickland** in that the evidence available of record clearly shows Petitioner deliberated and there was no dispute regarding the deliberation element during trial.

On direct appeal the state appellate court reviewed the challenged instruction for plain error after noting the parties agreed that this first-degree murder verdict director did not comply with MAI-CR3d 304.04 because it did not personally ascribe to Petitioner the element of deliberation. Acknowledging that a verdict director omitting an essential element that was seriously disputed at trial rises to the level of plain error, the Missouri Court of Appeals concluded there was no plain error here, and the jury's verdict was not adversely affected by the omission, because the deliberation element was not disputed at trial. In particular, the state appellate court pointed out that, during trial, Petitioner stated he did not dispute the deliberation element and instead denied participation in the crime.

In Petitioner's post-conviction appeal, which raised the issue whether his trial attorney's failure to object to Instruction No. 8 constituted the ineffective assistance of counsel, the state appellate court concluded that the earlier finding of no error in the instruction, upon plain error review of the instruction on direct appeal, precluded re-litigation of the issue as an ineffective assistance of counsel claim in the post-conviction appeal. In support of its decision, the Missouri Court of Appeals noted again that, during trial, Petitioner had not contested the element of deliberation or "cool reflection" and instead had denied any participation in the

crime; therefore, there was no prejudice or manifest injustice in the instructional error because it was related to an undisputed matter.

The United States Supreme Court has acknowledged in a federal habeas proceeding under 28 U.S.C. § 2254 that due process may be violated by a jury instruction that fails to give effect to the requirement that the State prove every element of the offense(s) in a criminal proceeding. **Middleton v. McNeil**, 541 U.S. 433, 437 (2004) (per curiam) (citing to Sandstrom v. Montana, 442 U.S. 510, 520-21 (1979)). The Court further observed, however, that

> not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is "'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'" Estelle . . ., 502 U.S. [at] 72 . . . (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

**Middleton**, 541 U.S. at 437. The allegedly erroneous instruction "must be considered in the context of the instructions as a whole and the trial record"; and the fact that an instruction was allegedly incorrect under state law is not a basis for habeas relief. **Estelle**, 502 U.S. at 71-72. Importantly, while an omission or misstatement of an element of an offense in a jury instruction may violate the federal constitution, it is not a structural defect in the trial process and is subject to harmless error review. See **Neder v. United States**, 527 U.S. 1, 8-16 (1999) (addressing conceded error in not submitting materiality to the jury and applying harmless error analysis; not a federal habeas proceeding under § 2254); **Seiler v. Thalacker**, 101 F.3d 536, 539-40 (8th Cir. 1996) (reversing the issuance of a federal habeas writ under § 2254 upon

concluding that any constitutional error in the first-degree burglary instruction was harmless beyond a reasonable doubt).

When an ineffective assistance of counsel claim is based on an attorney's failure to object to an instruction that lacks a required element, the court may consider whether the petitioner was prejudiced, i.e., whether the outcome of the proceeding would have been different if counsel had objected. See **Grooms v. Lockhart**, 919 F.2d 505, 508 (8th Cir. 1990) (per curiam) (no prejudice, and no habeas relief, based on counsel's failure to object to a concededly erroneous instruction requiring the jury to find two, rather than three, prior convictions to find that the petitioner was an habitual offender; the petitioner had testified to having three prior convictions and, therefore, any objection by counsel would not have changed the outcome.) If the petitioner is not prejudiced by the lack of objection, then counsel has not provided ineffective representation. **Id.**

In **Reagan v. Norris**, 365 F.3d 616 (8th Cir. 2004), the United States Court of Appeals for the Eighth Circuit considered a petitioner's ineffective assistance of counsel claim based on the trial attorney's failure to object to an erroneous first-degree murder instruction that did not contain the word "knowingly." The petitioner's attorney acknowledged both that he had not noticed the instructional error due to lack of time and he did not have a strategic reason for failing to object to the instruction. **Id.** at 620. Satisfaction of the performance prong of the **Strickland** test was not disputed. **Id.** at 621. Rather, the question was whether the petitioner was prejudiced by his attorney's deficient performance. **Id.** Upon finding the evidence of the petitioner's guilt was not "so overwhelming," the Eighth Circuit found prejudice to the

petitioner resulted from the attorney's failure to object to the instruction, and granted habeas relief. **Id.** at 621-22. Such a result is not warranted here.

Having carefully considered this ground, the undersigned concludes that, even assuming Petitioner's counsel's failure to object to the first-degree murder verdict director constitutes deficient performance so as to satisfy the first prong of the **Strickland** test under **Reagan**, supra, the available record establishes that Petitioner was not prejudiced by the attorney's failure to object to the instruction. First, Petitioner did not contest the deliberation element of the first-degree murder offense during trial. As the state appellate courts noted, Petitioner's counsel stated during his closing argument, "It's not about w[he]ther [Victim] was killed, or whether it was cool reflection if he was killed, it was whether there was an agreement" between Petitioner and Henderson to kill Victim (emphasis added). (Trial Tr., Resp't Ex. A, at 379-30.) Second, the evidence reveals that Petitioner deliberated in that he provided money and drugs to Henderson as payment for the shooting, provided Henderson with the ammunition used in the shooting, and gave Henderson a ride to and from the scene of the shooting. Under the circumstances, there is not a sufficient showing that the outcome of the trial would have been different if Petitioner's trial attorney had objected to Instruction No. 8.

Petitioner urges that the effect on the result of the appeal of his trial attorney's failure to object to the instruction should also be considered. Assuming it is proper for the undersigned to consider this argument, it is procedurally barred because it was not pursued in Petitioner's postconviction appeal, even if it was presented in Petitioner's amended

postconviction motion, as contended by Petitioner. To have fairly presented the claim, Petitioner had to present it to the state appellate court on the same factual ground and legal theory pursued in this proceeding. See **Wemark**, 322 F.3d at 1021. In his postconviction appeal Petitioner argued only that his attorney's failure to object to the improper verdict director affected the outcome of trial, and did not urge it adversely affected the direct appeal. See, e.g., Pet'r Br., Resp't Ex. H, at 24 ("Here, the jury was not instructed on the only issue challenged at trial, so confidence in the outcome of the trial must be lost"). As discussed earlier with respect to grounds four and five, Petitioner procedurally defaulted this argument by failing to present it in his postconviction appeal, and he has failed to demonstrate either cause and prejudice or a fundamental miscarriage of justice to support consideration of its merits. Therefore, the argument is procedurally barred and will not be addressed on its merits.

The state court decision that Petitioner's trial attorney's failure to object to the first-degree murder verdict director, Instruction No. 8, did not constitute the ineffective assistance of counsel is not contrary to or an unreasonable application of clearly established federal law, and is not based on an unreasonable determination of the facts.

Ground three should be denied on its merits.

## Conclusion

After careful consideration, the undersigned will direct the sealing of both the legal file and the second volume of the trial transcript in Petitioner's underlying criminal case because they each reveal a complete social security number; will recommend that Petitioner's signed federal habeas petition be denied because grounds one through three lack merit and grounds

four and five are procedurally barred; and will recommend that Petitioner's unsigned federal habeas petition be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of the Court shall file and maintain **UNDER SEAL** the second volume of the trial transcript, Resp't Ex. A-2, as well as the legal file, Resp't Ex. B, for the underlying state criminal case.

**IT IS RECOMMENDED** that the signed 28 U.S.C. § 2254 petition filed in this case by Derrick McFarland [Doc. 4] be **DENIED** without further proceedings because the claims presented as grounds one through three lack merit and the claims presented as grounds four and five are procedurally barred.

**IT IS FINALLY RECOMMENDED** that the unsigned 28 U.S.C. § 2254 petition filed in this case by Derrick McFarland [Doc. 1] be **DENIED** as moot.

The parties are advised that they have **fourteen days** to file written objections to this Recommendation and the Memorandum incorporated herein pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of January, 2015.